***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner, the plaintiff's Form 44, the defendant's brief and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Comp Management, Inc., as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on July 18, 2002, when he stepped on a power cable, causing him to twist his right knee and fall. As a result of the incident, defendant filed an I.C. Form 60 on August 2, 2002. Plaintiff has received temporary total disability benefits pursuant to the Form 60 from July 23, 2002 to October 21, 2002 and from January 28, 2003 to February 23, 2003. Defendant did not accept compensability for any alleged injury to plaintiff's groin or testicles.
5. Plaintiff's average weekly wage was $376.00, which yields a weekly compensation rate of $250.68.
6. The issues for determination are:
a. Is plaintiff entitled to continued temporary total disability benefits due to his right knee injury?
b. Is plaintiff's alleged groin or testicle injury causally related to the July 18, 2002 compensable injury?
c. Has plaintiff unjustifiably refused suitable employment?
d. Has plaintiff reached maximum medical improvement from the July 18, 2002 compensable injury? If so, does he retain any permanent impairment as a result of the compensable injury?
7. The parties stipulated the following documentary evidence:
a. Medical records, 191 pages,
b. I.C. Forms and filings,
c. Defendant's Answers to Interrogatories,
d. Machine Off-Bearer Job Description, and
e. General Assembler Job Description.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-one year old male native of Honduras. He has been in the United States since 1992, working in various employment. In 1995, he moved to North Carolina. He is five feet three inches tall and weighs two hundred pounds.
2. On February 9, 2002, plaintiff began working for defendant, where he was assigned to work on the Fletcher #1 machine on third shift as a machine off bearer. His duties included receiving wood pieces from the previous work station, placing them at his machine for processing, checking the quality of the pieces being processed, stacking them on trucks to take to the next machine, assisting the machine operator with set up and maintenance, and cleaning the machine and work area. The cut pieces weighed five pounds or less. The job required the incumbent to be able to read and write.
3. Throughout the course of his employment with defendant, plaintiff spoke English. He did not have any difficulty communicating with his supervisors or coworkers, and they did not have any problems understanding him.
4. On July 18, 2002, plaintiff was cleaning around the machine when he stepped on a power cable and twisted his right knee. He fell to the floor. A coworker told supervisor Charlie Pearson, plaintiff had fallen, and Mr. Pearson walked over to investigate the matter. Plaintiff spoke to Mr. Pearson in English, telling him he had hurt his knee. He also pointed to his right knee when describing where he was injured.
5. Plaintiff did not report any injury to his groin or testicles to Mr. Pearson on July 18, 2002 when he reported hurting his right knee.
6. Second shift foreman Josh Whisnant drove plaintiff to the emergency room for treatment. Throughout the drive, plaintiff held his right knee and complained of it hurting. Plaintiff did not tell Mr. Whisnant of any pain or injury other than that to his right knee during the trip to the hospital.
7. Dr. Kenneth L. Crutcher of Caldwell Memorial Hospital examined plaintiff, during which he (plaintiff) complained of hyperextension injury to the right knee after which he fell on the knee. A knee immobilizer was applied and crutches were given, along with instructions as to use to avoid weight bearing. He was given pain medication and instructed to follow-up with Dr. McCormick in five to seven days. Dr. Crutcher authorized plaintiff to remain out of work for one to two days and released him to return to regular duty work on Monday.
8. On August 2, 2002, defendant referred plaintiff's case to Corvel Corporation for medical case management. The file was assigned to Estella Barrett, R. N., to provide on-site management to assist with translation due to plaintiff's limited English. Ms. Barrett thereafter accompanied plaintiff to medical appointments, and she translated information between plaintiff and his medical providers.
9. Senior Claims Specialist Jennifer Hinnant with Comp Management, Inc., prepared an I.C. Form 19, Employer's Report of Injury, which was filed with the Commission on August 8, 2002, which listed the injury as a right knee ligament strain.
10. On July 23, 2003, plaintiff went to Dr. John T. McCormick of Carolina Orthopaedic Specialists for follow-up treatment. In the patient history form, plaintiff noted he injured his right knee when his leg got tangled up with electric wires at work, causing him to fall on the right leg. Plaintiff did not report any problem with his groin or testicles. Ms. Barrett attended the appointment to provide translation services. Dr. McCormick prescribed Vicodin for pain and ordered an MRI. He authorized plaintiff to continue out of work.
11. The August 2, 2002, MRI was compromised due to plaintiff's motion. However, they were able to determine he had an anterior cruciate ligament tear, probable tear of the posterior horn of the lateral meniscus, tear of the lateral collateral ligament, osteochondral fracture of the lateral tibial plateau, and a bone bruise or marrow edema involving the posterior aspect of the lateral tibial plateau. Based upon the MRI findings, Dr. McCormick recommended surgery. However, the surgery had to be postponed due to lab results. Dr. McCormick continued plaintiff out of work until after surgery.
12. On September 9, 2002, Dr. McCormick performed a resection of the torn lateral meniscus followed by anterior cruciate ligament reconstruction. During the surgery, Dr. McCormick noted plaintiff had poor bone quality in the tibia, which complicated the surgery.
13. On September 11, 2002, plaintiff sought treatment at the emergency room of Caldwell Memorial Hospital for knee pain after surgery. Dr. Mark Batts provided Demerol and Phenergan. He instructed plaintiff to follow-up with Dr. McCormick and to take his medications.
14. At the September 19, 2002 appointment, Dr. McCormick noted plaintiff was being totally uncooperative and resistant to any sort of rehab. Dr. McCormick noted there was a serious lack of motivation, and he ordered home physical therapy. In the September 26, appointment, Dr. McCormick noted significant progress, although plaintiff still refused to move his right ankle.
15. Between September 19, 2002 and October 31, 2002, Quest4 Life Rehabilitation provided physical therapy for plaintiff post-operatively. By October 1, 2002, plaintiff was complaining of pain radiating up from the right knee through his right testicle. Dr. McCormick also ordered home therapy, which was provided by Caldwell County Home Health from September 20 until September 25, 2002.
16. Dr. McCormick found the ACL healing well by October 3, 2002, even though plaintiff refused any weight bearing. Dr. McCormick thought plaintiff's problem with therapy was due to a communication problem even though the medical case manager stressed to plaintiff the importance of ambulation.
17. At the follow-up appointment on October 17, 2002, plaintiff complained to Dr. McCormick of unbearable pain, inability to sleep and pain in his testicles. On exam, Dr. McCormick found plaintiff had a full extension. Dr. McCormick performed the standard straight leg-raising test; and based upon plaintiff's responses, Dr. McCormick noted his behavior was indicative of total, willful lack of cooperation and diagnostic of malingering. Dr. McCormick further stated he saw no point in confronting plaintiff about this and refused to waste more time arguing with plaintiff. A custom brace was ordered, and plaintiff was authorized to return to work as of October 21, 2002 at sedentary work.
18. Plaintiff returned to work on October 21, 2002, where he was assigned to work in a seated job, setting screws into drawer guides. Plaintiff only worked for one day in this job.
19. On October 21, 2002, plaintiff went to Caldwell Memorial Hospital where he was seen in the emergency room by Dr. Wickham Simonds for right knee pain. Plaintiff reported therapy made his knee pain worse and his testicles ached. Dr. Simonds admitted plaintiff and referred him to Dr. James Stanislaw for evaluation of right knee pain. Plaintiff reported he tried to return to work but was unable to stay for more than two hours due to pain. Dr. Stanislaw provided additional pain medication and removed plaintiff from work.
20. On October 22, 2002, defendant prepared an I.C. Form 28T, Notice of Termination of Compensation by Reason of Trial Return to Work, which reflected plaintiff's temporary total disability benefits were terminated on October 21, 2002 after he returned to work at the same or greater wages. Plaintiff did not have a physician complete an I.C. Form 28U.
21. By letter dated October 25, 2002, Scott W. Roberts filed a letter of representation with Jennifer Hinnant of Comp Management, Inc., requesting copies of medical reports and a Form 22 Wage Chart. This correspondence was copied to the Industrial Commission.
22. Mr. Roberts filed a separate notice of representation with the Commission on October 29, 2002, which included an I.C. Form 18, Notice of Accident to Employer. On the Form 18, plaintiff claimed an injury to his right knee and groin from the incident on July 18, 2002.
23. On October 28, 2002, Dr. McCormick saw plaintiff for follow-up. On exam, he found plaintiff had excellent motion, full extension, good stability, and almost 90 degrees of flexion. Plaintiff stated he did not feel he could return to work, but Dr. McCormick discussed this with him for over fifteen minutes, refuting plaintiff's contention. On or about November 7, 2002, Dr. McCormick wrote that plaintiff complained of testicular pain and numbness in his right leg since surgery. Dr. McCormick could find no objective basis for plaintiff's complaints. He noted it was impossible to examine plaintiff's testicular area, and he was uncertain as to whether plaintiff was being uncooperative or if he was unable to tolerate the pain.
24. On November 19, 2002, plaintiff sought treatment with Dr. M. Brian Bauer of Caldwell Urology Associates, during which he used an interpreter. Plaintiff reported a history of the knee injury at work, and of having pain in both testicles since the incident. He did not report an overt testicular trauma in the fall. He also did not report any difficult voiding. On examination, Dr. Bauer noted the greatest discomfort was in the area of the epididymides. An ultrasound on November 22, 2002 revealed small discrete cyst of each side, the largest being 5 mm., and an abnormality of the right testicle, which bears watching. However, there is no evidence plaintiff followed up on this recommendation.
25. On November 26, 2002, Dr. Glenn B. Perry of Perry Barron Orthopeadics saw plaintiff for an independent medical evaluation of the right knee. On examination, Dr. Perry found plaintiff had full extension and flexion. Dr. Perry ordered an MRI of the knee to determine if the tibial screw extended into the joint space. A lumbar MRI was ordered to rule out a disc perfusion. The December 3, 2002 right knee MRI revealed an intact graft, but a tear in the posterior one-third of the lateral meniscus and degenerative signal in the middle and posterior one-third of the medial meniscus.
26. On December 20, 2002, plaintiff had a lumbar MRI, which revealed mild spinal stenosis at L4-5 secondary to diffuse disc bulging, facet joint hypertrophy and ligamentum flavum redundancy.
27. On January 28, 2003, Dr. Perry reviewed the MRI and EMG and found them to reveal mild spinal stenosis L4-5 secondary to diffuse disc protrusion. There was no diagnostic evidence of right lower extremity weakness. Dr. Perry recommended a neurological evaluation or removal of the screws in the tibia. Dr. Perry authorized plaintiff to remain out of work from January 29, 2003 until surgery.
28. On February 10, 2003, Dr. Perry performed a right knee arthroscopy and patellar shaving of the right knee. He returned to Dr. Perry for follow-up on February 19, 2003, at which time plaintiff was unable to move any of his lower right extremity. Dr. Perry noted he was unable to explain the etiology of this. He authorized plaintiff to return to work on February 24, 2003 at sedentary level work. A neurological consultation was ordered to evaluate plaintiff's unexplained paralysis.
29. Upon his release to return to work on February 24, 2003, defendant offered plaintiff to return to the screw fitter job. Plaintiff came to work for a portion of the day on February 24, 2003; however, he refused to return to work thereafter. This work was suitable to his restrictions and was a regular job in the workplace.
30. On March 4, 2003, Dr. Nancy Morewitz of Piedmont Neurological Consultants saw plaintiff for an evaluation of his persistent right leg weakness. He reported becoming unable to move his right leg after the surgery on September 9, 2002. Dr. Morewitz found plaintiff had normal strength in the right leg. She found that the leg weakness was of unknown etiology and recommended a brain MRI to rule out CVA and better pain control to get better efforts in physical therapy.
31. On April 2, 2003, plaintiff returned to Dr. Perry, who authorized him to return to work at a sedentary job. Based upon the neurological evaluation, Dr. Perry found plaintiff had reached maximum medical improvement from the right knee injury and treatment and assigned a permanent impairment rating of five percent to the right leg.
32. On July 29, 2003, Dr. Robert A. Blake of Carolina Orthopaedic and Sports Medicine Center saw plaintiff on a special consultation at the request of plaintiff's counsel. Plaintiff related a history of the work injury and treatment. He reported having pain all over his knee and in his privates. Dr. Blake reviewed records from Dr. Crutcher, Dr. McCormick, physical therapy, diagnostic testing, Dr. Perry, Dr. Bauer, and Dr. Morewitz. On examination, Dr. Blake found plaintiff had equal muscle diameter in the legs and no evidence of muscle wasting. Dr. Blake concurred with the diagnoses as articulated by Dr. McCormick. He did disagree with the permanent impairment rating as assigned by Dr. Perry and indicated he would rate plaintiff as having a sixteen percent permanent impairment to the right leg due to the two surgeries. Dr. Blake also concurred plaintiff was capable of returning to sedentary level work. He noted no explanation for the inability to use the right leg and for the orchialgia.
33. Plaintiff reached maximum medical improvement on April 2, 2004.
34. Plaintiff retained a sixteen percent permanent partial impairment to his right leg as a result of the July 18, 2002 compensable injury.
35. There is no competent medical evidence to support a finding that plaintiff sustained any testicular or groin injury as a result of the July 18, 2002 compensable injury.
36. Plaintiff unjustifiably refused suitable work which defendant offered which was within his restrictions.
 ***********
The foregoing findings of fact engender the following
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has failed to prove by competent evidence he is entitled to additional temporary total disability benefits as a result of the accident.
2. Where the exact nature and probable genesis of a particular injury involves complicated medical questions removed from the ordinary experience of the layperson, only a qualified expert witness can give an opinion as to the nature and cause of the injury. Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389
(1980). Plaintiff failed to offer competent medical opinion to causally relate his complaints of groin or testicular problems to the compensable injury.
3. As plaintiff unjustifiably refused to accept suitable work, he is not entitled to any additional temporary total disability benefits. N.C. Gen. Stat. §97-32.
4. Plaintiff is entitled to permanent partial disability compensation at the rate of $250.68 per week for thirty-two weeks as a result of the sixteen percent (16%) percent rating to the right leg. N.C. Gen. Stat. § 97-31(15).
5. Plaintiff is entitled to have defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiff's claim for additional temporary total disability benefits is, and under the law must be, Denied.
2. Defendant shall pay permanent partial disability compensation at the rate of $250.68 per week for thirty-two weeks.
3. Defendant shall pay medical expenses incurred when bills for the same have been approved, in accordance with the provisions of the Act. Defendant is not liable for any medical treatment related to the alleged testicular or groin problem.
4. Defendant shall pay the costs.
This the ___ day of June 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER